IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HUNTER WILEY,

Plaintiff,

v.                                                  Civil No. 08-1036 (GAG)

FRANK C. STIPES, et al.,

Defendants.

**OPINION AND ORDER**

Plaintiff Hunter Wiley brought this shareholder derivative suit on behalf of W Holding Company, Inc. ("W Holding") against certain officers and directors of W Holding for violations of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201 et seq., breach of fiduciary duty, waste of corporate assets, unjust enrichment, and violations of Puerto Rico General Corporations Law of 1995, P.R. Laws Ann. Tit. 14 § 2601 et seq.. Defendants Frank C. Stipes, Pedro R. Dominguez, Freddy Perez Maldonado, Norberto Rivera, Ramon Rosado, Cesar A. Ruiz, Cornelius Tamboer, Hector L. Del Rio, Juan C. Frontera, and Ricardo Hernandez (collectively, "defendants") move to dismiss the plaintiff's amended complaint (Docket No. 15) pursuant to Fed.R.Civ.P. 12(b)(6) and 23.1. Defendants argue in their motion to dismiss that: a) the plaintiff does not have standing to pursue claims on behalf of W Holding because the amended complaint fails to allege the required details about his purchase and continuous ownership of company stock; b) that the plaintiff failed to plead particularized facts establishing that a majority of W Holding's directors was incapable of considering a demand on each of his claims in a disinterested and independent manner; and c) that plaintiff's claims in Counts I, III, IV, and V fail as a matter of law.  After reviewing the pleadings, the court **GRANTS** in part and **DENIES** in part defendants' motion to dismiss (Docket No. 27).

**I.   Relevant Factual Background as Alleged in the Complaint**

The plaintiff in this derivative action is, and at all relevant times has been, an owner and holder of W Holding common stock.  Nominal defendant W Holding is a Puerto Rico corporation that operates as the holding company for its wholly-owned subsidiary Westernbank, Puerto Rico

**Civil No. 08-1036 (GAG)**

("Westernbank"). Westernbank is a commercial bank operating in Puerto Rico that offers an array of business and consumer financial products and services, including banking, trust, and brokerage services. Westernbank operates five divisions, including the Westernbank Business Credit Division ("Business Credit Division"), which conducts commercial asset-based lending activities. The remaining defendants are officers and directors of W Holding.

From April 2006 until the present ("the relevant period") the defendants directed W Holding to represent that its filings with the United States Securities and Exchange Commission ("SEC") were drafted in accordance with generally accepted accounting procedures ("GAAP"). In particular, defendants directed W Holding to affirm that its loan impairments for loans originated by Westernbank were classified in accordance with the Statement of Financial Accounting Standards ("SFAS") No. 114. This particular standard provides that a loan is impaired when, based on current information and events, it is probable that a creditor will be unable to collect all amounts due according to the contractual terms of the loan agreement. Under this standard, a creditor should apply its normal loan review procedures in making a judgment about whether it is probable that it will be unable to collect all amounts due according to the contractual terms of the loan agreement. W Holding, however, was not in compliance with GAAP and SFAS No. 114 and, thus, was overstating the value of Westernbank's loan portfolio. This is because a number of Westernbank's loans, including loans to Inyx, Inc. ("Inyx") for over $100 million, were not sufficiently collateralized and would be uncollectible.

Throughout the relevant period, Westernbank conducted asset-based lending activities that relied upon non-existent collateral for the repayment of loans originated by it. The imprudent policies came to light on June 26, 2007 when W Holding announced that a large asset-based loan was impaired due to an $80 million collateral deficiency. While not disclosed initially, it was later discovered that W Holding was referring to loans made to Inyx. On February 6, 2008, W Holding disclosed that the actual collateral deficiency was not $80 million, as originally reported, but $105 million. W Holding further announced that, due to these unreported asset impairment losses, its

**Civil No. 08-1036 (GAG)**

financial statement for the periods from September 2006 to March 2007 were materially false and would need to be restated. During the relevant period, the defendants not only failed to properly evaluate Inyx loans and equity lines, but actively continued to lend funds to troubled Inyx, despite having access to and knowing that there were severe problems with the collateral supporting the loan disbursements.

W Holding assured the public that its loans exceeding $500,000 were individually evaluated for impairment and were subject to a rigorous review process that resulted in proper disclosure of loan delinquencies and appropriate measures to obtain recoveries in the event of borrower defaults. All loans in excess of $500,000 originating from the Business Credit Division had to be reviewed and ratified by the Senior Credit Committee, composed of 5 directors and 6 members of the senior management. All loans in excess of $15 million originating from the Business Credit Division had to be approved by the Senior Credit Committee and had to be reviewed by the board of directors. All loans in excess of $50 million required the approval of the board. Due to a lack of internal controls, W Holding did not individually evaluate its loans for impairment. As a result of W Holding's behavior during the relevant period, its credibility with investors has been deteriorated and analysts have downgraded its stock.

## II. Standard of Review

Rule 12(b)(6) permits a party to move for dismissal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). The court accepts as true all well-pleaded facts and draws all reasonable inferences in the non-moving party's favor. Id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).

Because this suit involves a federal shareholder derivative action, plaintiffs' complaint must meet the heightened pleading standards of Fed.R.Civ.P. 23.1, which provides that a shareholder must plead with particularity either that demand was made on the corporation or that demand was futile.

**Civil No. 08-1036 (GAG)**

Because W Holding is incorporated in Puerto Rico, the issue of whether demand upon W Holding's board of directors would have been futile is controlled by Puerto Rico law. Kamen v. Kemper Fin. Serv., Inc., 500 U.S. 90, 108-9 (1991). Puerto Rico law does not specifically elaborate the requirements of demand or when it is excused. See Gonzalez Turul v. Rogatol Distributors, Inc., 951 F.2d 1, 3 n.4 (1st Cir. 1991). Because Puerto Rico corporate law was modeled after Delaware corporate law, the court turns to Delaware corporate law for the test of demand futility. Id.

Under Delaware law, inquiry into whether demand is excused proceeds under either the Aronson v. Lewis, 473 A.2d 805 (Del. 1984), or the Rales v. Blasband, 634 A.2d 927 (Del. 1993), test. Under the two-pronged Aronson test, demand will be excused if the derivative complaint pleads particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson, 473 A.2d at 814. However, there are three circumstances in which the Aronson test will not be applied: "(1) where a business decision was made by the board of a company, but a majority of the directors making the decision have been replaced; (2) where the subject of the derivative suit is **not a business decision of the board**; and (3) where [. . .] the decision being challenged was made by the board of a different corporation." Rales, 634 A.2d at 933-34 (emphasis added). In those situations, according to the Rales test, demand is excused only where "particularized factual allegations [. . .] create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Id. at 934. This demand futility analysis has to be conducted on a claim by claim basis. Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 833 A.2d 961, 977 n.48 (Del. Ch. 2003).

**III.   Analysis**

**A.   Continuous Ownership of Stock at all Relevant Periods**

In their motion to dismiss defendants argue that the plaintiff has failed to allege the required details about his purchase and continuous ownership of W Holding stock. The plaintiff, in his

**Civil No. 08-1036 (GAG)**

amended complaint, alleges that he "is, and was at times relevant hereto, an owner and holder of W Holding common stock." Docket No. 15 ¶ 13. In order for the plaintiff to have standing to pursue claims on behalf of W Holding, he must demonstrate that he owned company stock at the time of the alleged wrongdoing and continues to own stock up to and through the litigation. Fed.R.Civ.P. 23.1(b)(1). When reviewing a motion to dismiss, the court has to accept as true all well-pleaded facts and draw all reasonable inferences in the non-moving party's favor. Bell Atl. Corp., 127 S.Ct. at 1965; Parker, 514 F.3d at 90. Therefore, this court finds that the plaintiff has pleaded the required details in order to show his continuous ownership of W Holding stock from the moment of the alleged wrongdoing throughout the present litigation given that he stated that he is, and was at all times relevant to this action, an owner and holder of W Holding common stock.

## B. Demand Futility Analysis

Fed.R.Civ.P. 23.1(b)(3) provides that in a derivative action the shareholder must plead with particularity either that demand was made on the board of directors of the corporation before the derivative suit was brought or that demand would have been futile. The inquiry into whether demand is excused proceeds under either the Aronson or the Rales test. The court, accepting as true and drawing all inferences in favor of the plaintiff, notes that the board of directors of W Holding failed to act despite having information about the Inyx loans and the possibility that Inyx would default, rather than actively participate in the alleged wrongful conduct. Therefore, it is appropriate to apply the Rales test in this action. The application of the Rales test in order to evaluate demand futility has to be carried out on a claim by claim basis. Beam ex rel. Martha Stewart Living Omnimedia, Inc., 833 A.2d at 977 n.48.

In order for a plaintiff to be excused from making a demand on the board of directors, under the Rales test, he must make particularized factual allegations which create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgement in responding to a demand. Rales, 634 A.2d at 934. A director is considered interested "where a corporate decision will have a materially

**Civil No. 08-1036 (GAG)**

detrimental impact on a director, but not on the corporation and the stockholders." Id. at 936. In those instances, "a director cannot be expected to exercise his or her independent judgment without being influenced by the [. . .] personal consequences resulting from the decision." Id. Plaintiff argues that the board is interested because a majority of the directors faces a substantial likelihood of personal liability for abdicating their oversight duties to the company. Among other things, directors can be deemed interested parties for purposes of pleading demand futility if they face a substantial risk of liability for violating their fiduciary duties. See Ryan v. Gifford, 918 A.2d 341, 356 (Del. Ch. 2007).

The standard for holding directors liable for damages resulting from a breach of the duty of care is gross negligence. Aronson, 473 A.2d at 812. When the corporate charter exculpates the directors from damages liability for breach of their duty of care (as the W Holding corporate charter does), in order to establish a substantial likelihood of liability on a claim based on a failure to act, the plaintiff must plead facts showing the necessary conditions predicate for director oversight liability: "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." In re Sonus Networks, Inc., 499 F.3d 47, 67 (1st Cir. 2007). In order to impose liability, the plaintiff must show that the directors knew that they were not discharging their fiduciary obligations. Id. When directors fail to act in the face of a known duty to do so, thereby consciously demonstrating a disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith. Id. "A failure to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the duty of care (i.e., gross negligence)." Id. (citing Stone v. Ritter, 911 A.2d 362 (Del. 2006)). The types of allegations necessary to show conscious neglect of the duty to supervise the company's financial reporting would be, among others, that the Senior Credit Committee, being composed of 5 out of the 7 directors who comprised the board of directors of W Holding, had clear notice of

6

**Civil No. 08-1036 (GAG)**

serious irregularities with the Inyx loans and simply chose to ignore them or, even worse, encouraged their continuation. See id.

In this case, as members of the Senior Credit Committee, a majority of the board was aware, or should have been aware, of the dangers of loaning more money to Inyx and of the inconsistencies in the financial statements due to the impairment of the Inyx loans. In failing to act in order to prevent the granting of more loans to Inyx and failing to correct financial statements which did not state that the Inyx loans were impaired, the majority of the board of directors exposed themselves to liability for violating their duty of loyalty. They failed to act in the face of a known duty to do so, thereby consciously demonstrating a disregard for their responsibilities. This could constitute a breach of their duty of loyalty given that they failed to discharge their fiduciary obligation in good faith. As such, they are deemed interested parties for purposes of the demand futility analysis. However, given that the demand futility analysis must be done on a case by case basis, the court finds that demand was not futile as to Count I.[1] Count I only includes defendant Stipes. In regards to that count, a majority of the directors is not interested, therefore, a demand on the board to request a reimbursement for certain payments made by the company to Stipes would not have been futile. Therefore, this court **GRANTS** defendant's motion to dismiss as to Count I and **DENIES** the motion to dismiss as to the remaining counts.

    **C.**    **Dismissal of Counts III, IV, and V on the Merits**

    *(i)*    *Count III: Corporate Waste*

To recover on a claim for corporate waste a plaintiff must allege that there has been an "exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." Brehm v. Eisner, 746 A.2d 244,

---

[1] Plaintiff's claim against defendant Stipes is based on Section 304 of the Sarbanes-Oxley Act. This section provides that if a public company prepares an accounting restatement due to material non-compliance with any financial reporting requirement under federal securities laws, and such non-compliance resulted from misconduct, then the company's CEO and CFO must reimburse the company for certain payments made by it to those executives.

**Civil No. 08-1036 (GAG)**

263 (Del. 2000). Plaintiff claims that defendants wasted corporate assets by recklessly loaning funds which were not adequately secured by collateral, by paying bonuses to certain of its executive officers, and by potentially incurring in billions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions. Defendants aver that in order to recover on a claim of corporate waste, a plaintiff must allege that the exchange was "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 74 (Del. 2006) (citing Brehm, 746 A.2d at 263). They argue that plaintiff's claim does not meet this test. Furthermore, they argue that this count should be dismissed as to defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera given that their compensation is not alleged in the amended complaint.

In deciding a motion to dismiss, the court has to accept as true all well-pleaded facts and draw all reasonable inferences in the non-moving party's favor. Bell Atl. Corp., 127 S.Ct. at 1965; Parker, 514 F.3d at 90. In doing so, this court finds that plaintiff has alleged enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp., 127 S.Ct. at 1965. Furthermore, the court finds that it is not necessary for the plaintiff to claim defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera's compensation given that the plaintiff is claiming corporate waste for the approval of the Inyx loans and the exposure to potential legal liability, in addition to corporate waste for the paid bonuses. Therefore, this court **DENIES** the motion to dismiss as to Count III.

*(ii)   Count IV: Unjust Enrichment*

The elements of an unjust enrichment claim are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 393 (Del. Ch. 1999). Plaintiff claims that, by their wrongful acts and omissions, the defendants were unjustly enriched at the expense and to the detriment of W Holding. The plaintiff posits that, by overstating the value of W Holding, the director's bonuses were inflated. The defendants, on the other hand, argue that plaintiff has not alleged any cause and effect connection between the alleged

**Civil No. 08-1036 (GAG)**

approval of the Inyx loans and the enrichment of any defendant. Furthermore, they argue that this count should be dismissed as to defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera given that their compensation is not alleged in the amended complaint.

In deciding a motion to dismiss, the court has to accept as true all well-pleaded facts and draw all reasonable inferences in the non-moving party's favor. Bell Atl. Corp., 127 S.Ct. at 1965; Parker, 514 F.3d at 90. In doing so, the court finds that plaintiff has alleged enough facts to "raise a right to relief above the speculative level" against defendants Stipes, Dominguez, Maldonado, Rivera, and Hernandez. Bell Atl. Corp., 127 S.Ct. at 1965. However, the court finds that this claim should be dismissed without prejudice as to defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera given that their compensation was not alleged by the plaintiff in his amended complaint and therefore the plaintiff cannot claim and essential element of unjust enrichment against them (i.e., the occurrence of an enrichment). The plaintiff may, nevertheless, amend his complaint to include defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera's compensation. Therefore, this court **GRANTS** defendant's motion to dismiss without prejudice as to defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera for Count IV and **DENIES** the motion to dismiss as to the remaining defendants in regards to Count IV.

*(iii)   Count V: Violation of P.R. Laws Ann. Tit. 14 § 2727*

A section 2727 claim has four elements: "(1) publication or disbursement of information regarding a corporation's condition or business, in writing; (2) falsity; (3) intent; and (4) injury." Wadsworth, Inc. v. Schwarz-Nin, 951 F. Supp. 314, 328 (D.P.R. 1996). Plaintiff alleges that defendants violated § 2727 by either furnishing, approving, or knowingly causing the publication of the improper statements that falsely portrayed W Holding's financial condition and business prospects. They further contend that the defendants acted with knowledge and intent and, for that reason, caused damage to W Holding. Defendants argue that the plaintiff has failed to allege that W Holding was duped by its own misstatements and injured as a result. Furthermore, they aver that plaintiff has failed to plead any factual basis to support his conclusions of intent.

**Civil No. 08-1036 (GAG)**

In deciding a motion to dismiss, the court has to accept as true all well-pleaded facts and draw all reasonable inferences in the non-moving party's favor. <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1965; <u>Parker</u>, 514 F.3d at 90. In doing so, this court finds that plaintiff has alleged enough facts to "raise a right to relief above the speculative level." <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1965. Therefore, the court **DENIES** defendant's motion to dismiss as to Count V.

**IV.   Conclusion**

For the abovementioned reasons, the court **GRANTS** defendants' motion to dismiss Count I against all defendants and Count IV against defendants Rosado, Ruiz, Tamboer, Del Rio, and Frontera and **DENIES** defendants' motion as to all other counts.

**SO ORDERED.**

In San Juan, Puerto Rico this 2nd day of February 2009.

S/Gustavo A. Gelpí

GUSTAVO A. GELPI

United States District Judge